ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

JOHN H. MARTIN, Senior Trial Attorney (Colo. Bar #32667)
Wildlife & Marine Resources Section
999 18th St., Suite 600 North Terrace
Denver, CO 80202
Tel: 303-844-1383
Fax: 303-844-1350
Email: john.h.martin@usdoj.gov

SARA M. WARREN, Trial Attorney (GA Bar No. 966948)
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel:   (202) 307-1147
Fax:   (202) 305-0275
Email:  sara.warren@usdoj.gov

JENNIFER SUNDOOK, Trial Attorney (DC Bar No. 241583)
Natural Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel:   (202) 341-2791
Fax:   (202) 341-2791
Email:  Jennifer.sundook@usdoj.gov

*Attorneys for Federal Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KĀPA‘A, CONSERVATION COUNCIL FOR HAWAI‘I, and CENTER FOR BIOLOGICAL DIVERSITY, | CASE NO. CV 25-00209-MWJS-WRP |

|  | |
|---|---|
| Plaintiffs, | FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: FIFTH AND SIXTH CLAIMS FOR RELIEF; CERTIFICATE OF SERVICE |
| vs. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; HOWARD LUTNICK, in his official capacity as Secretary of Commerce of the United States; LAURA GRIMM, in her official capacity as Acting Administrator of the National Oceanic and Atmospheric Administration; EUGENIO PIÑEIRO SOLER, in his official capacity as Assistant Administrator for NOAA Fisheries; and DOUG BURGUM, in his official capacity as Secretary of the Interior of the United States, | Date: August 5, 2025 Time: 1:00 PM Judge: Hon. Micah W.J. Smith Related to ECF 13 |
| Defendants. | |

# FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: FIFTH AND SIXTH CLAIMS FOR RELIEF

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................10

BACKGROUND ..................................................................................................11

   I.   United States Fisheries in the Western Pacific.............................................11

   II.   History of the Monument .........................................................................14

      A.  Proclamation 8336: Creation of the Monument and Prohibition on
Commercial Fishing.........................................................................................14

      B.  Proclamation 9173: Expansion of the Monument .....................................16

      C.  Proclamation 10918: Removing the Prohibition on Commercial Fishing in
Certain Areas..................................................................................................17

LEGAL STANDARD..........................................................................................20

ARGUMENT .......................................................................................................21

   I.   Plaintiffs Have Not Established Article III Standing on Claims 5 and 6......21

   II.   Claims 5 and 6 Are Not Subject to Judicial Review..................................25

      A.  The April 2025 letter is not reviewable under § 1855(f) of the Magnuson-
Stevens Act.....................................................................................................25

      B.  The April 2025 letter is not a "final agency action" under the APA. ........29

         1.  The letter did not mark the consummation of the agency's
decisionmaking process. ..................................................................................30

         2.  No legal consequences flowed from the letter.......................................31

CONCLUSION ....................................................................................................35

## TABLE OF AUTHORITIES

| **Cases** | **Page(s)** |
|---|---|

*Advanced Integrative Med. Science Inst., PLLC v. Garland*,
   24 F.4th 1249 (9th Cir. 2022) ........................................................ 30, 33

*Anglers Conservation Network v. Pritzker*,
   70 F. Supp.3d 427 (D.D.C. 2014) ...................................................... 27

*Anglers Conservation Network v. Pritzker*,
   809 F.3d 664 (D.C. Cir. 2016) ........................................................... 20

*Backcountry Against Dumps v. Fed. Aviation Admin.*,
   77 F.4th 1260 (9th Cir. 2023) ............................................................ 21

*Bennett v. Spear*,
   520 U.S. 154 (1997) ..................................................................... 30, 31

*City of San Diego v. Whitman*,
   242 F.3d 1097 (9th Cir. 2001) ........................................................... 31

*Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*,
   97 F. Supp.3d 1210 (D. Hi. 2025) ...................................................... 21

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ......................................................... 24

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .......................................................................... 22

*Devon Energy Corp. v. Kempthorne*,
   551 F.3d 1030 (D.C. Cir. 2008) ......................................................... 31

*Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
   543 F.3d 586 (9th Cir. 2008) ............................................................. 32

*Farkas v. Tex. Instrument, Inc.*,
   375 F.2d 629 (5th Cir. 1967) ............................................................. 23

*Farmer v. Phila. Elec. Co.*,
  329 F.2d 3 (3d Cir. 1964) ...................................................................................23

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ............................................................................. 29, 30, 33

*Goethel v. U.S. Dep't of Commerce*,
  854 F.3d 106 (1st Cir. 2017) ..............................................................................28

*Golden & Zimmerman, LLC v. Domenech*,
  599 F.3d 426 (4th Cir. 2010) ........................................................................ 30, 31

*Green v. Locke*,
  No. CIV.A. 10-707 MLC, 2010 WL 3614216 (D.N.J. Sept. 8, 2010) ................28

*Indep. Equip. Dealers Ass'n v. EPA*,
  372 F.3d 420 (D.C. Cir. 2004) ...........................................................................31

*Indep. Meat Packers Ass'n v. Butz*,
  526 F.2d 228 (8th Cir.1975) ...............................................................................23

*Lane v. Pena*,
  518 U.S. 187 (1996) ............................................................................................26

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................................... 21, 22

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017) ............................................................................22

*Or. Trollers Ass'n v. Gutierrez*,
  452 F.3d 1104 (9th Cir. 2006) ............................................................................28

*S. Cal. Aerial Advertisers' Ass'n v. Fed'l Aviation Admin.*,
  881 F.2d 672 (9th Cir. 1981) ..............................................................................32

*San Diego Air Sports Center, Inc. v. Fed'l Aviation Admin.*,
  887 F.2d 966 (9th Cir. 1989) ...............................................................32

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2009) ..........................................................................22

*Turtle Island Restoration Network v. U.S. Dep't of Com.*,
  438 F.3d 937 (9th Cir. 2006) ......................................................... 26, 27

*Tutein v. Daley*,
  43 F.Supp.2d 113 (D.Mass.1999).......................................................27

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
  5 F.4th 997 (9th Cir. 2021) ...................................................... 21, 31, 32

## Statutes

5 U.S.C. §§ 552-553...........................................................................25

5 U.S.C. §§ 701-706...........................................................................21

5 U.S.C. § 702....................................................................................29

5 U.S.C. § 704....................................................................................30

16 U.S.C. § 1801 .......................................................................... 11, 20

16 U.S.C. § 1801(a)(6)........................................................................11

16 U.S.C. § 1802(11) ..........................................................................11

16 U.S.C. § 1811(a) ............................................................................11

16 U.S.C. § 1852(a)(1)(H)...................................................................12

16 U.S.C. § 1852(h)(1).........................................................................12

16 U.S.C. § 1853..................................................................................12

16 U.S.C. §§ 1853-1854 ........................................................................26

16 U.S.C. § 1854 ................................................................................13

16 U.S.C. § 1854(a)-(c) .......................................................................12

16 U.S.C. § 1855(f)(1) ....................................................................26, 29

16 U.S.C. § 1855(f)(1)-(2) ..............................................................20, 26

16 U.S.C. § 1855(f)(2) .........................................................................28

16 U.S.C. § 6901 ................................................................................14

16 U.S.C. § 6904 ................................................................................14

54 U.S.C. § 320301 ............................................................................10

**Regulations**

50 C.F.R. § 300.212 ............................................................................14

50 C.F.R. § 300.215 ............................................................................14

50 C.F.R. § 300.218 ............................................................................14

50 C.F.R. § 300.219 ............................................................................14

50 C.F.R. § 300.223 ............................................................................14

50 C.F.R. § 300.224 ............................................................................14

50 C.F.R. § 300.226 ............................................................................14

50 C.F.R. § 665.798 ............................................................................13

50 C.F.R. § 665.801 ............................................................................13

50 C.F.R. § 665.802 ...............................................................................14

50 C.F.R. § 665.803 ...............................................................................13

50 C.F.R. § 665.806 ...............................................................................13

50 C.F.R. § 665.808 ...............................................................................13

50 C.F.R. § 665.810 ...............................................................................13

50 C.F.R. § 665.811 ...............................................................................14

50 C.F.R. § 665.812 ...............................................................................14

50 C.F.R. § 665.813 ...............................................................................14

50 C.F.R. § 665.813(j) ...........................................................................13

50 C.F.R. § 665.814 ...............................................................................14

50 C.F.R. § 665.815 ...............................................................................14

50 C.F.R. § 665.819 ...............................................................................13

**Presidential Proclamations**

Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983) ...............................11

Proclamation No. 8336, 74 Fed. Reg. 1565 (Jan. 6, 2009)......................... 14, 15, 24

Proclamation No. 9173, 79 Fed. Reg. 58645 (Sept. 25, 2014).................. 16, 17, 24

Proclamation No. 10918, 90 Fed. Reg. 16987 (Apr. 17, 2025)................. 18, 23, 33

**Federal Register**

78 Fed. Reg. 12015 (Feb. 21, 2013) ...........................................................15

78 Fed. Reg. 32996 (June 3, 2013) ............................................................15

80 Fed. Reg. 1881 (Jan. 14, 2015) .............................................................17

80 Fed. Reg. 15693 (March 25, 2015) ........................................................17

## INTRODUCTION

On April 17, 2025, President Trump exercised his authority under the Antiquities Act, 54 U.S.C. § 320301, to remove the prohibition on commercial fishing in certain areas of the Pacific Remote Islands Marine National Monument. In their Complaint, Plaintiffs challenge this Proclamation, but they have chosen to defer resolution of the merits of their claims about the Proclamation "for another day." Pls.' Brief (ECF 13-1) at 1-2, 28.

Here, Plaintiffs only seek partial summary judgment on Claims 5 and 6 of their Complaint, which do *not* challenge the President's Proclamation. Instead, Plaintiffs challenge an April 25, 2025 letter from the Regional Administrator of the National Marine Fisheries Service to commercial fishing permittees that were authorized to fish in the Western Pacific Ocean.

The Service's letter created no new legal rights or obligations. Rather, the letter merely notified commercial fishermen of a change that had already taken place—that the President's Proclamation had lifted the prohibition on commercial fishing in certain areas of the Monument. And the letter informed the fishermen that commercial fishing was therefore allowed in those areas, subject to existing fishing regulations for the Western Pacific Ocean. Thus, Plaintiffs' challenge to the letter fails on threshold jurisdictional grounds.

First, Plaintiffs lack Article III standing because they cannot show that the letter caused their alleged injuries. Second, even if Plaintiffs had standing, the Court lacks jurisdiction to review their argument under the Magnuson-Stevens Fishery Conservation and Management Act (the "Magnuson-Stevens Act" or "Act") because the letter is neither a regulation nor an action taken pursuant to a regulation implementing a fishery management plan, which are the only avenues for judicial review under the statute. And even if the Administrative Procedure Act ("APA") separately provided a cause of action for failure to engage in notice and comment rulemaking, such a claim is unavailable here because the letter is not a final agency action. For these reasons, the Court should deny Plaintiffs' motion for partial summary judgment and dismiss Claims 5 and 6 with prejudice.

## BACKGROUND

### I.     United States Fisheries in the Western Pacific

The Magnuson-Stevens Act, 16 U.S.C. § 1801 *et seq*., establishes a national program for conservation and management of fishery resources, including resources within the exclusive economic zone ("EEZ"). *Id.* §§ 1801(a)(6), 1811(a). Generally, the EEZ extends 200 nautical miles from the coasts of the U.S. states and territories. *Id.* § 1802(11); Proclamation No. 5030, 48 Fed. Reg. 10605 (Mar. 10, 1983). The Service, acting under authority delegated from the Secretary of Commerce, is responsible for managing fisheries pursuant to the Act.

The Service ensures that commercial fishing is regulated for conservation and management of fisheries throughout the U.S. EEZ in the Western Pacific, and that fishermen operating under these regulations use mitigation measures to reduce impacts to protected species, including seabirds and species protected by the Endangered Species Act and Marine Mammal Protection Act. Any United States commercial fishing vessel operating in the Western Pacific—and any vessel operating in the waters around the Monument opened to commercial fishing by the President's Proclamation—must comply with the Service's fisheries regulations.

Under the Magnuson-Stevens Act framework, U.S. fisheries are regulated under fishery management plans developed by eight regional fishery management councils and approved and implemented by the Service through regulations. 16 U.S.C. §§ 1852(h)(1), 1853, 1854(a)-(c). Each regional fishery management council develops a fishery management plan for each of the fisheries in its purview. *Id.* § 1853. In the Western Pacific region, the Western Pacific Fishery Management Council assists with developing fishery management plans (which the Council calls fishery ecosystem plans) to manage commercial fisheries. *See id.* § 1852(a)(1)(H). Those Plans include, as relevant here, the Pacific Remote Island Areas Plan, *see* Administrative File ("Admin. File," ECF 21-3 to 21-8) 000715 to 00925, and the Western Pacific Pelagic Plan, Admin. File 000464 to 000714. The Pacific Remote Island Areas Plan relates to species that generally might be fished

near the shore such as bottomfish, crustaceans, coral reef, and precious corals. Admin. File 000715 to 00925. The Western Pacific Pelagic Plan relates to species that inhabit the pelagic water column, including many highly migratory species such as tuna, sharks, and wahoo. Admin. File 000464 to 000714.

The Service approves fishery management plans and implements them through implementing regulations recommended by the regional councils. 16 U.S.C. § 1854. The Service has implemented the Pacific Remote Island Areas Plan at 50 C.F.R. Part 665, Subpart E. The Service's implementing regulations for the Pacific Pelagic Plan are found at 50 CFR Part 665, Subpart F. The Western Pacific Pelagic Plan and its implementing regulations apply throughout the U.S. EEZ of the entire Western Pacific region and, for domestic vessels, on the high seas, which lie beyond the EEZ. *See* 50 C.F.R. § 665.798; Western Pacific Pelagic Plan 1.4, Admin. File 000485 to 000486. It provides management measures including permitting requirements (50 C.F.R. § 665.801); gear and practice restrictions (*id.* § 665.810); limits on catch and effort (*id.* §§ 665.813(j), 665.819); at-sea observer requirements (*id.* § 665.808); the requirement to give notice before leaving port on a fishing trip (*id.* § 665.803), prohibitions on fishing in certain areas, or with certain types of equipment (*id.* § 665.806)*,* and measures designed to minimize or mitigate interactions with protected species and seabirds (*id.*

§§ 665.802, 665.811, 665.812, 665.813, 665.814, 665.815).[1]

## II.     History of the Monument

### A.     Proclamation 8336: Creation of the Monument and Prohibition on Commercial Fishing

In January 2009, pursuant to the Antiquities Act, President George W. Bush

issued Proclamation 8336 establishing the Pacific Remote Islands Marine National

Monument. The Monument included the waters and submerged and emergent

lands within 50 nautical miles of Wake Island, Baker Island, Howland Island,

Jarvis Island, Johnston Atoll, Kingman Reef, and Palmyra Atoll. Admin. File

000451, 000454; *see also* 74 Fed. Reg. 1565 (Jan. 6, 2009). In Proclamation 8336,

President Bush directed the Secretaries of Commerce and the Interior to "prohibit

commercial fishing within the boundaries of the monument" and "take appropriate

action pursuant to their respective authorities under the Antiquities Act and the

---

[1] In the Western Pacific, the Service also regulates fisheries under a separate authority, the Western and Central Pacific Fisheries Convention Implementation Act, through which the United States carries out its obligations under the Convention on the Conservation and Management of the Highly Migratory Fish Stocks in the Western and Central Pacific Ocean and implements the decisions of the Commission for the Conservation and Management of Highly Migratory Fish Stocks in the Western and Central Pacific Ocean. 16 U.S.C. §§ 6901, 6904. The Service's regulations under that authority are found in 50 C.F.R. Part 300, Subpart O, and include certain catch limits, limits on the number of fishing days that can be conducted by purse seine vessels, reporting and monitoring obligations, observer requirements, and requirements to minimize or mitigate interactions with protected species. 50 C.F.R. §§ 300.212, 300.215, 300.218, 300.219, 300.223, 300.224, 300.226.

14

[Magnuson-Stevens Act], and such other authorities as may be available to implement this proclamation, to regulate fisheries, and to ensure proper care and management of the monument." Admin. File 000454 to 000455. That same day, President Bush also established two other Marine National Monuments.

In February 2009, the Regional Administrator for the Service's Pacific Islands Regional Office issued a letter to commercial fishing permit holders advising them of the change:

> Please be aware that the commercial fishing prohibitions and other terms set out in the Presidential Proclamations **became immediately effective upon issuance of the Proclamations on January 6th**. Accordingly, all commercial fishing within the waters of the three marine National Monuments . . . is now prohibited.

Admin. File 000463 (emphasis added).

Four years later, in February 2013, on recommendation of the Western Pacific Fishery Management Council, the Service published a proposed rule and request for comments proposing regulations specific to the Monument for consistency with Proclamation 8336. Admin. File 001267 to 001282; *see also* 78 Fed. Reg. 12015 (Feb. 21, 2013). In June 2013, the Service published the final rule, creating regulations specific to the Monument found at 50 C.F.R. Part 665, Subpart H. Admin. File 001292 to 001303; *see also* 78 Fed. Reg. 32996 (June 3, 2013). The rule "codif[ied] certain provisions of the Proclamation," including the blanket prohibition on commercial fishing. Admin. File 001301. It also established

regulations for non-commercial fishing within the Monument, consistent with the President's direction to take action under the Magnuson-Stevens Act to regulate fisheries within the Monument. Admin. File 001301 to 001302. In the final rule, the Service also noted the past low levels of commercial and non-commercial fishing in the areas that were affected by the commercial fishing prohibition. Admin. File 001293.

### B.      Proclamation 9173: Expansion of the Monument

In September 2014, pursuant to the Antiquities Act, President Barack Obama issued Proclamation 9173, proclaiming the waters and submerged lands within the EEZ seaward of the Monument area established by Proclamation 8336 (i.e., from about 50 to 200 nautical miles offshore of Jarvis Island, Wake Island, and Johnston Atoll) to be the Pacific Remote Islands Marine National Monument Expansion. Admin. File 001327 to 001332; *see also* 79 Fed. Reg. 58645 (Sept. 25, 2014). Proclamation 9173 further provided:

> Nothing in this proclamation shall change the management of the Pacific Remote Islands Marine National Monument as specified in Proclamation 8336. . . . . The Secretaries of the Interior and Commerce shall not allow or permit any appropriation, injury, destruction, or removal of any object of the Monument Expansion except as provided for by this proclamation and shall prohibit commercial fishing within the boundaries of the Monument Expansion.
>
> The Secretaries of the Interior and Commerce shall take appropriate action pursuant to their respective authorities under the Antiquities Act, the Magnuson-Stevens Fishery Conservation and Management

Act, and such other authorities as may be available to implement this proclamation, to regulate fisheries, and to ensure proper care and management of the Monument Expansion.

Admin. File 001329 to 001330.

In January 2015, on recommendation of the Western Pacific Fishery Management Council to implement the fishery management plans in the Western Pacific, the Service published a proposed rule and request for comments on an update to its regulations to include the prohibitions on commercial fishing in the expanded parts of the Monument around Jarvis Island, Wake Island, and Johnston Atoll. Admin. File 001333 to 001336; *see also* 80 Fed. Reg. 1881 (Jan. 14, 2015). The proposed rule stated, "Proclamation 9173 prohibited commercial fishing in the PRI Monument Expansion and directed the Secretaries of the Interior and Commerce to ensure that recreational and non-commercial fishing continue to be managed as sustainable activities in the PRI Monument and Monument Expansion." Admin. File 001334.

In March 2015—six months after Proclamation 9173— the Service published the final rule making those updates to the regulations. Admin. File 001337 to 00139; *see also* 80 Fed. Reg. 15693 (March 25, 2015).

**C. Proclamation 10918: Removing the Prohibition on Commercial Fishing in Certain Areas**

On April 17, 2025, pursuant to the Antiquities Act, President Trump issued

Proclamation 10918, which found that a ban on commercial fishing was not

necessary in the Monument Expansion area and revised Proclamation 9173 by

replacing the section on the management of the Monument. Admin. File 002798 to

002800, *see also* 90 Fed. Reg. 16987 (Apr. 17, 2025). In doing so, Proclamation

10918 deleted Proclamation 9173's ban on commercial fishing. The replacement

text provides that commercial fishing shall not be prohibited and directs the

agencies to implement the Proclamation:

> Between 50 to 200 nautical miles from the landward boundaries of the
> Monument, **the Secretary of Commerce shall not prohibit**
> **commercial fishing** within the boundaries of the Monument and the
> Monument Expansion in those areas where the Monument and
> Monument Expansion is coterminous with the Exclusive Economic
> Zone of the United States. The implementation of any regulation of
> commercial fishing within the Monument and the Monument
> Expansion shall be done in coordination with the Secretary of
> Defense. . . .
>
> The Secretary of Commerce and the Secretary of the Interior shall
> take appropriate action pursuant to their respective authorities under
> the Antiquities Act; the Magnuson-Stevens Fishery Conservation and
> Management Act; and such other authorities as may be available to
> implement this proclamation, to regulate fisheries, and to ensure
> proper care and management of the Monument Expansion.

Admin. File 002799 (emphasis added). Proclamation 10918 also called on the

Secretary of Commerce to publish new rules amending or repealing burdensome

regulations on commercial fishing in the Monument. Admin. File 002800.

As with the previous Proclamations concerning the Monument, the

provisions related to commercial fishing had immediate effect. To communicate

this change to commercial fishermen, on April 25, 2025, the Regional

Administrator for the Service's Pacific Islands Regional Office sent a letter to

commercial fishing permit holders. Admin. File 002802 to 002808. The letter gave

information about the change brought about by Proclamation 10918:

> This letter is to inform you that commercial fishing is no longer
> prohibited in certain areas of the [Monument], as described herein.
> Specifically, commercial fishing may be conducted seaward of 50
> nautical miles around Wake Island, Johnston Atoll, and Jarvis Island
> to the full extent of the 200-mile U.S. exclusive economic zone
> (EEZ), to the extent authorized under regulations implementing the
> Fishery Ecosystem Plan for Western Pelagic Fisheries (50 CFR 665
> Subpart F), the Fishery Ecosystem Plan for the Pacific Remote Island
> Areas (50 CFR 665 Subpart E), and International Fishing Regulations
> set forth in 50 CFR Part 300.

Admin. File 002802.

The letter then described the change that Proclamation 10918 made to

Proclamation 9173's prohibition on commercial fishing in the expanded areas of

the monument:

> The Presidential Proclamation further amended Proclamation 9173 of
> September 25, 2014, to remove the commercial fishing prohibition in
> the areas 50-200 nautical miles created by Proclamation 9173, and
> became effective upon issuance on April 17, 2025. As a result, federal
> regulations at 50 CFR §§ 665.933(a) and 665.934(a) implementing
> Proclamation 9173's commercial fishing prohibition are no longer
> effective between 50-200 nautical miles around Wake Island,
> Johnston Atoll, and Jarvis Island.

*Id.*

The letter reminded commercial fishermen that commercial fishing remained

prohibited within 50 nautical miles of shore in the Monument, provided

coordinates and a map of the areas where commercial fishing remained prohibited,

and indicated that the Service planned to initiate a housekeeping rulemaking to

bring the existing regulations in line with the changes that Proclamation 10918

made to Proclamation 9173. Admin. File 002802 to 002808. The Service shared

the letter with permit holders in the Hawaii longline fishery and American Samoa

longline fishery, both of which are authorized to fish in the Pacific Remote Islands

Area, and U.S. purse seine fishermen authorized to fish in the Western Pacific.

ECF 21-1, Dec. of Sarah Malloy.

## LEGAL STANDARD

The Magnuson-Stevens Act establishes a framework for managing and

conserving fisheries. 16 U.S.C. § 1801 *et seq.* The Act's judicial review provision

allows for review in only two limited circumstances: (1) "regulations" promulgated

by the Secretary under the Magnuson-Stevens Act; or (2) actions taken by the

Secretary under regulations which implement a fishery management plan. *Id.*

§ 1855(f)(1)-(2). When judicial review is available under the Magnuson-Stevens

Act, the Act incorporates, on a limited basis, the review provisions of the APA. *Id.*

(incorporating review provisions in 5 U.S.C. § 706(2)(A)-(D)); *see also Anglers*

*Conservation Network v. Pritzker*, 809 F.3d 664, 668 (D.C. Cir. 2016).

Thus, under both the Magnuson-Stevens Act or the APA, the scope of the

Court's review is governed by the judicial review provisions of the APA, 5 U.S.C. §§ 701-706. Under the APA, courts may review final agency actions to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and "without observance of procedure required by law." *See Backcountry Against Dumps v. Fed. Aviation Admin.*, 77 F.4th 1260, 1267 (9th Cir. 2023). Summary judgment is an appropriate mechanism for APA review. *See Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*, 97 F. Supp.3d 1210, 1218-19 (D. Hi. 2025). But, the Court can only conduct APA review of a final agency action. *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1007-10 (9th Cir. 2021).

## ARGUMENT

### I. Plaintiffs Have Not Established Article III Standing on Claims 5 and 6

Before the Court can reach the merits of Plaintiffs' Magnuson-Stevens Act and APA claims, they must first meet the threshold requirement of establishing Article III standing for each claim they assert. Because Plaintiffs fail to meet their burden as to Claims 5 and 6, the Court should dismiss those claims.

To satisfy Article III's case and controversy requirement, a plaintiff must prove three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A

plaintiff "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2009) (citation omitted). When a plaintiff alleges—as Plaintiffs have here—a purely procedural injury, such as a failure to engage in a notice-and-comment process, the threshold for showing an imminent injury may be "less demanding," but "[w]here a plaintiff cannot 'explain *in any way* how their [interests] may be affected' by agency action, it has not suffered an injury in fact." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1161 (9th Cir. 2017) (citation omitted). Further, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citation modified).

At the summary judgment stage, the plaintiff must set forth specific facts to establish each element of standing. *Id.* at 561. The plaintiff bears the burden of establishing standing on claim-by-claim basis. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).

In Claims 5 and 6 of their Complaint, Plaintiffs challenge the Service's issuance of the April 2025 letter to commercial fishery permit holders without engaging in notice and comment. Plaintiffs claim the opening of the Monument Expansion to commercial fishing adversely affects "Plaintiffs' scientific,

professional, educational, recreational, cultural, spiritual, religious, subsistence, and aesthetic interests." Pls.' Br. at 2. But, the April 2025 letter did not open the Monument Expansion area to commercial fishing. The letter merely informed commercial fishery permit holders that Presidential Proclamation 10918 had lifted the commercial fishing restrictions in the Monument Expansion area. Admin. File 002802. The Proclamation, not the letter, had "the force and effect of laws." *See Indep. Meat Packers Ass'n v. Butz*, 526 F.2d 228, 234 (8th Cir.1975) (proclamation issued under statutory authority has force of law); *see also Farkas v. Tex. Instrument, Inc*., 375 F.2d 629, 632 n.1 (5th Cir. 1967); *Farmer v. Phila. Elec. Co*., 329 F.2d 3, 7 (3d Cir. 1964).

Contrary to Plaintiffs' position, the letter was not *"*designed to prescribe law by amending the Monument's fishing regulations to lift the ban on commercial fishing in the Monument Expansion and to define the commercial fishing that may now occur there." Pls.' Br. 24. The President, not the Service, took the action that lifted the commercial fishing ban in the Monument Expansion area of the Monument. Proclamation 10918 not only deleted Proclamation 9173's prohibition on commercial fishing, it also stated, "the Secretary of Commerce shall not prohibit commercial fishing" in the Monument Expansion area. Admin. File 002799; *see also* Admin. File 001330. It therefore forecloses the Service from prohibiting commercial fishing in connection with its management of the

Monument Expansion.

And the Service never closed the Monument Expansion area to commercial fishing in the first place. In 2009, the Service sent a letter (similar to the letter at issue here) merely informing permittees that Proclamation 8336 had closed the Monument to commercial fishing. Admin. File 000463. Similarly, the Service promulgated housekeeping regulations in 2013 and 2015 for consistency with Proclamations 8336 and 9173. Admin. File 001267 to 001282, 001292 to 001303, 001333 to 001336, 001337 to 001339.

Therefore, the letter could not have caused Plaintiffs' alleged aesthetic, cultural, spiritual, and scientific injuries, and Plaintiffs have not established that element of standing. *See Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1161 (D.C. Cir. 2005) (in a procedural injury case, holding a plaintiff "must still demonstrate a causal relationship between the final agency action and the alleged injuries").

Further, even if the letter had never been sent or were set aside by the Court, commercial fishing would not be prohibited in the Monument Expansion area. Just as commercial fishing in the Monument was banned immediately when Proclamation 8336 was issued, *see* Admin. File 000463, 000454 to 000455, commercial fishing in the Monument Expansion areas would still be permitted under Proclamation 10918. The letter did not open the Monument Expansion area

to fishing, and vacatur of the letter would not close off the area to fishing.

In sum, the letter did nothing more than inform commercial fishery permit holders of the content of Proclamation 10918 and remind them of the existing regulations on commercial fishing. It did not cause Plaintiffs' alleged injuries, and setting it aside would not redress those alleged injuries. Plaintiffs have therefore failed to establish Article III standing for Claims 5 and 6.

## II. Claims 5 and 6 Are Not Subject to Judicial Review

Claims 5 and 6 challenging the April 2025 letter under both the Magnuson-Stevens Act and the APA are not subject to review for additional reasons besides lack of standing. Judicial review is not available under the limited judicial review provisions of the Magnuson-Stevens Act. Nor is it available under the APA, because there is no "final agency action."

### A. The April 2025 letter is not reviewable under § 1855(f) of the Magnuson-Stevens Act.

Plaintiffs incorrectly claim they are entitled to relief under the judicial review provision of the Magnuson-Stevens Act, arguing that the April 2025 letter violated the Magnuson-Stevens Act's requirement to engage in notice and comment rulemaking (which is actually the APA's requirement to engage in notice and comment rulemaking, 5 U.S.C. §§ 552-553).[2] Under the Magnuson-Stevens

_____

[2] Plaintiffs do not say specifically whether they are seeking relief from a regulation "promulgated by the Secretary under this chapter" or an action "taken

Act, judicial review is available in two, limited circumstances: First, where a petitioner challenges "[r]egulations promulgated by the Secretary under this chapter," *i.e.*, the Magnuson-Stevens Act, 16 U.S.C. § 1855(f)(1); and second, where a petitioner challenges "actions that are taken by the Secretary under regulations which implement a fishery management plan," *id.* § 1855(f)(1)-(2). These limited waivers of sovereign immunity must be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Judicial review is unavailable because the letter is not a "regulation." 16 U.S.C. § 1855(f)(1). The Act does not define the term "regulation," but, as the Ninth Circuit has explained, the unique process for promulgating regulations under the Act *shows* what a regulation is. *See Turtle Island Restoration Network v. U.S. Dep't of Com.*, 438 F.3d 937, 947 (9th Cir. 2006). Generally, Magnuson-Stevens Act regulations are first proposed by the fishery management council under Section 1853(c), then evaluated by the Service, and, if the Service approves of the regulations, proposed by the Service in the Federal Register before final publication in the Federal Register. 16 U.S.C. §§ 1853-1854. In other cases, the

---

by the Secretary under regulations which implement a fishery management plan," 16 U.S.C. § 1855(f)(1)-(2), and they appear to invoke both provisions. Plaintiffs' failure to clearly identify the provision under which they are seeking review is of little consequence, though, because their claim does not meet either of the Act's narrow avenues for judicial review and is therefore not reviewable under that statute.

Service may use emergency regulatory authority or other general authority under Section 1855(d), again, according to specific procedures provided by statute. "That such a limited window for judicial review exists specifically with respect to *regulations* makes sense in light of 16 U.S.C. §§ 1852-1854, which establish a highly detailed and public process leading up to the adoption of regulations." *Turtle Island Restoration Network*, 438 F.3d at 947; (citing *Tutein v. Daley,* 43 F.Supp.2d 113, 124 (D.Mass.1999)). But, the April 2025 letter was not promulgated pursuant to the specific procedures in 16 U.S.C. §§ 1852-1855. Thus, the letter is not a regulation for purposes of judicial review under the Magnuson-Stevens Act.

Nor was the letter "promulgated by the Secretary . . . in the Federal Register." The judicial review provisions in Section 1855(f) apply only to "secretarial 'actions' that are published in the Federal Register." *Anglers Conservation Network v. Pritzker*, 70 F. Supp.3d 427, 435-36 (D.D.C. 2014) (citation omitted) (holding that a Regional Administrator's provision of guidance and advice to a fishery management council was not subject to judicial review under Section 1855(f)), *aff'd*, 809 F.3d 664 (D.C. Cir. 2016). Here, the Regional Administrator for the Pacific Islands Regional Office, issued the letter to permittees. The Regional Administrator does not have delegated authority from the

Secretary of Commerce to issue regulations for publication in the Federal Register. Admin. File 002815 to 002825.

Nor can Plaintiffs avail themselves of judicial review for "actions that are taken by the Secretary under regulations which implement a fishery management plan." 16 U.S.C. § 1855(f)(2). In *Goethel v. U.S. Dep't of Commerce*, 854 F.3d 106, 115-16 (1st Cir. 2017), the First Circuit held that an email notification purporting to establish a date that fisheries would have to fund certain monitoring activities was not an "action" for purposes of Section 1855(f)(2). The court explained that the email in question was merely an update to keep fishermen abreast of developments related to a final rule published months before. *Id.* at 116. As in *Goethel*, 854 F.3d at 116, the April 2025 letter to permittees was not an "action" for purposes of Section 1855(f)(2). The letter identified no action under a regulation to implement a fishery management plan. The letter did no more than inform the fishermen of the recent change made by the Proclamation.

And, similar to Section 1855(f)(1), "'actions' reviewable under 16 U.S.C. § 1855(f)(2) are limited to those 'promulgated or . . . published in the Federal Register.'" *Green v. Locke*, No. CIV.A. 10-707 MLC, 2010 WL 3614216, at *5 (D.N.J. Sept. 8, 2010) (alteration in original). The Ninth Circuit has also noted that "actions" implementing fishery management plans are published in the Federal Register. *Or. Trollers Ass'n v. Gutierrez*, 452 F.3d 1104, 1115-16 (9th Cir. 2006).

In sum, neither avenue for judicial review in the Magnuson-Stevens Act applies to Plaintiffs' claim.[3]

**B.       The April 2025 letter is not a "final agency action" under the APA.**

As an alternative to their Magnuson-Stevens Act claim, Plaintiffs claim that the April 2025 letter is reviewable under the APA because the letter is a "rule" "designed to prescribe law by amending the Monument's fishing regulations . . . and to define the commercial fishing that may now occur there." Pls.' Brief at 24. Plaintiffs' claim fails because the letter is not a "final agency action" for purposes of the APA.

"The APA sets forth the procedures by which federal agencies are accountable to the public and their actions are subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Specifically, the APA provides a right of review to a "person suffering legal wrong because of [an] agency action or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. To be subject to review, the agency action must be either "made reviewable by statute [or] final agency action for which there is no other adequate remedy." *Id.*

---

[3] Even if judicial review were available under the Magnuson-Stevens Act, Plaintiffs' claim would also fail because the Magnuson-Stevens Act allows review only "to the extent authorized by" the APA. 16 U.S.C. § 1855(f)(1). As discussed in section II.B of this brief, Plaintiffs' APA claim fails because the letter is not a final agency action. Plaintiffs' Magnuson-Stevens Act claim would fail for the same, additional reason.

§ 704. An agency action is final when it: (1) marks "the 'consummation' of the agency's decisionmaking process"; and (2) is a decision "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted). Moreover, an agency action is not final if it is only "the ruling of a subordinate official" or "tentative." *Franklin*, 505 U.S. at 797 (citation omitted).

### 1. The letter did not mark the consummation of the agency's decisionmaking process.

The April 2025 letter is not a final agency action. First, the letter was not the consummation of the Service's decisionmaking process because it was not an agency decision at all. *See Bennett*, 520 U.S. at 177-78. The letter merely communicated that Presidential Proclamation 10918 lifted the restriction on commercial fishing within the Monument Expansion area. Admin. File 002802. Like many letters sent by agencies to the regulated community, the letter reminded permittees to follow the existing regulations that cover commercial fishing in the Pacific Remote Islands Area. *See id.* Thus, the letter falls squarely within the category of agency communications that federal courts, including the Ninth Circuit, routinely hold are not final agency actions subject to APA review. *See, e.g.*, *Advanced Integrative Med. Science Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) (agency letter expressing legal opinion was not "final" under *Bennett* framework); *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 428,

30

431-32 (4th Cir. 2010) (holding that a "simply informational" agency publication did not constitute final agency action); *Devon Energy Corp. v. Kempthorne*, 551 F.3d 1030, 1039 (D.C. Cir. 2008) (rejecting argument that a "Dear Operator" letter informing industry how to calculate royalties on coalbed methane production was an improper rulemaking done without notice and comment); *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004) (holding that agency letter was not reviewable as the "type of workaday advice letter that agencies prepare countless times per year in dealing with the regulated community").

In addition, the letter cannot be the consummation of the agency's decisionmaking process because future agency action is expected. *See City of San Diego v. Whitman*, 242 F.3d 1097, 1101-02 (9th Cir. 2001) (letter expressing Environmental Protection Agency's legal interpretation was not "final" where future administrative action was expected). The letter expressly contemplated a future housekeeping update to the regulations for consistency with Proclamation 10918—just as the Service issued regulations for consistency with Proclamations 8336 and 9173.

### 2. No legal consequences flowed from the letter.

Under the second *Bennett* prong, the letter was neither a determination of legal rights and obligations nor a decision from which legal consequences flowed. *See Bennett*, 520 U.S. at 177-78. In *Whitewater Draw Natural Resource*

*Conservation District*, 5 F.4th at 1009, the Ninth Circuit considered a challenge to a manual that an agency used in National Environmental Policy Act ("NEPA") reviews. The court concluded that the manual was not a final agency action "by which rights or obligations have been determined, or from which legal consequences will flow," explaining, "NEPA, not the Manual, is the source of any binding legal obligations to which [the agency] is subject." *Id.* Likewise, here, the letter established no binding legal rights or obligations. Presidential Proclamation 10918 is responsible for removing the prohibition on commercial fishing, not the April 2025 letter. *See also Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 593-94 (9th Cir. 2008) (U.S. Army Corps Clean Water Act jurisdictional determination was not a final agency action because any consequences for failure to comply with the Clean Water Act "arise directly and solely from the [Act], and not from the Corps' issuance of an approved jurisdictional determination.").

Plaintiffs cite two inapposite decisions. Pls. Br. at 24-5 (citing *San Diego Air Sports Center, Inc. v. Fed'l Aviation Admin.*, 887 F.2d 966 (9th Cir. 1989), and *S. Cal. Aerial Advertisers' Ass'n v. Fed'l Aviation Admin.*, 881 F.2d 672, 678 (9th Cir. 1981)). Unlike the Federal Aviation Administration letters in those cases, which prohibited parachute jumping and a certain class of aircraft in certain

airspace, respectively, the April 2025 letter did not affirmatively prohibit or mandate any action.

The letter also lacks legal force because it was issued by the Regional Administrator. The Regional Administrator lacks authority to issue binding rules on behalf of the Service—much less to issue those rules unilaterally, without undertaking the Magnuson-Stevens Act's detailed procedures for rulemakings. *Franklin*, 505 U.S. at 797.

The Ninth Circuit has held that, as part of the *Bennett* inquiry, the court may take a "pragmatic" approach: "If [an] informational document . . . is little more than a restatement" of the applicable law, it is not a final agency action. *Advanced Integrative Med. Science Inst.*, 24 F.4th at 1260. In taking a pragmatic approach, the Court might consider this question: What would be the effect if the April 2025 letter were set aside by the Court, as Plaintiffs request? Setting aside the letter would not disturb the President's Proclamation and therefore would not close off the Monument Expansion to commercial fishing. Because Proclamation 10918 found that a prohibition on commercial fishing was not necessary and stated "the Secretary of Commerce shall not prohibit commercial fishing" in the Monument Expansion area, the Service cannot enforce Proclamation 9173's now-deleted prohibition on fishing there. Admin. File 002799. Nor would setting aside the letter change how fishing is regulated in the Pacific Remote Islands Area because, as

explained above, an existing regulatory framework regulates fishing in the Pacific Remote Islands Area.

The April 2025 letter did not make any law, but it has provided information to fishermen and members of the public about the status of the Monument. In the days after the President issued Proclamation 10918, and through June 2025, the Service received inquiries from at least 16 longline vessel owners and/or operators inquiring about the Proclamation or seeking a compliance check to make certain they could legally fish in the Monument Expansion area, and a permittee in a different region has expressed an interest in fishing that area. Dec. of Jason Mehlinger ¶¶ 3-4 & Ex. 1; Dec. of Mark Fox ¶ 3 & Ex. 4. U.S. Fish and Wildlife Service officials, including the Superintendent of the Pacific Islands Marine National Monument, similarly received inquiries from the public and media about the Proclamation. Dec. of Stefanie Gutierrez, Exs. 2-3. To hold that the Service cannot communicate with the public and regulated community about a change in the status quo, whether effected by Congress, the courts, or the President, without first engaging in notice and comment, would hinder the Service's ability to conserve and manage fisheries, as it is charged to do under the Magnuson-Stevens Act.

For all these reasons, there is no final agency action for purposes of the APA, and Plaintiffs' claim is not subject to judicial review.

## CONCLUSION

Because Plaintiffs have not demonstrated Article III standing for Claims 5 and 6, the Court should dismiss those claims for lack of jurisdiction. In the alternative, because Plaintiffs cannot show that their claims are reviewable under the Magnuson-Stevens Act or the APA, the Court should deny Plaintiffs' motion for partial summary judgment. Because the issue is a clear question of law, and because Plaintiffs have an opportunity to be heard on this question, Federal Defendants respectfully request that summary judgment be entered in Federal Defendants' favor on Claims 5 and 6 pursuant to Local Rule 56.1(i).

Dated: July 15, 2025

Respectfully submitted,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

/s/ *Sara M. Warren*
SARA M. WARREN (GA Bar No. 966948)
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 307-1147
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

JOHN H. MARTIN (Colo. Bar #32667)
Wildlife & Marine Resources Section
999 18th St., Suite 600 North Terrace
Denver, CO 80202

Tel: 303-844-1383
Fax: 303-844-1350
Email: john.h.martin@usdoj.gov

JENNIFER SUNDOOK (DC Bar No. 241583)
Natural Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel:   (202) 341-2791
Fax:   (202) 341-2791
Email:  Jennifer.sundook@usdoj.gov

*Attorneys for Federal Defendants*

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.4(e), I certify that the foregoing memorandum contains 5,973 words, exclusive of the caption, tables, and signature block. I have relied upon Microsoft Word to determine the word count.


<u>*/s/ Sara M. Warren*</u>
Sara M. Warren

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that, on July 15, 2025, the foregoing was electronically filed through the ECF filing system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.


*/s/ Sara M. Warren*
Sara M. Warren